## IN THE UNITED STATES DISTRICT COURT FOR THE
## EASTERN DISTRICT OF VIRGINIA

### Alexandria Division

| | | |
|---|---|---|
| **Haroldus Bernard Walton,** | ) | |
| **Petitioner,** | ) | |
| | ) | |
| **v.** | ) | **1:20cv1439 (RDA/IDD)** |
| | ) | |
| **Harold Clarke,** | ) | |
| **Respondent.** | ) | |

### MEMORANDUM OPINION

Haroldus Bernard Walton ("Walton" or "Petitioner"), a Virginia inmate proceeding pro se, filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, challenging his convictions in the Circuit Court of Greensville County, Virginia for statutory burglary while armed, use of a firearm in the commission of a felony, wearing a mask to conceal his identity, assault and battery, and two counts of robbery. [Dkt. No. 1]. Respondent has filed a Motion to Dismiss, with a supporting brief and exhibits. [Dkt. Nos. 15-17]. Petitioner was notified of his right to respond after receiving the notice required by Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975) [Dkt. No. 18], and has responded. [Dkt. Nos. 20-21]. Accordingly, this matter is now ripe for disposition. For the reasons that follow, respondent's Motion to Dismiss must be granted, and the petition will be dismissed.

### I. Procedural History

On April 18, 2017, a jury sitting in the Circuit Court of Greensville County convicted Walton of statutory burglary while armed, use of a firearm in the commission of a felony, wearing a mask to conceal identity, assault and battery, and two counts of robbery. The jury fixed his punishment at 36 years and 12 months in prison. The trial court imposed that sentence in a final order entered on July 25, 2017.

A judge of the Court of Appeals of Virginia denied Walton's petition for appeal on April 16, 2018 and he sought review by a three-judge panel. On June 12, 2018, a three-judge panel denied the appeal for the reasons stated in the April 16, 2018 order. Walton v. Commonwealth, Record No. 1282-17-2. The Supreme Court of Virginia refused his petition for appeal on February 7, 2019. Walton v. Commonwealth, Record No. 180913 (hereinafter "VSCT R. at __").

Walton executed a state habeas petition on April 19, 2019, and filed it in the Supreme Court of Virginia ("habeas court"). Walton v. Clarke, Record No. 190535.[1] The petition alleged:

> "[T]rial counsel was ineffective for failing to file a pretrial motion to suppress a coat with glass shards as well as money and debit cards taken from petitioner's person, where the discovery of these items were a result of an arrest without probable cause and exceeded the scope of the permissible search under Terry v. Ohio, 392 U.S. 1 (1968)."

(VSCT R. at 34). The habeas court denied and dismissed the petition on March 27, 2020, and held a claim first presented in Walton's reply to the respondent's motion to dismiss was not properly before the Court. (VSCT R. at 740) (citing Va. Code § 8.01-654(B)(2) and Rule 5:7(e)).

Walton filed a timely § 2254 habeas petition in this Court and raises two grounds:

> I. Walton was denied effective assistance of counsel when the trial court denied counsel's motion to withdraw and "ordered trial counsel to represent Walton on direct appeal even though there was a gross conflict of interest." [Dkt. No. 1 at 4]. Counsel refused to raise on appeal the issue of the trial court denied trial counsel's motion to withdraw and trial counsel's appointment as appellate counsel despite Walton's desire that she do so. Counsel knew that if she raised the issue on appeal that judicial scrutiny would focus on her representation in the trial court.
>
> II. Trial counsel was ineffective for failing to file a pretrial motion to suppress evidence resulting in the use of unlawfully seized evidence in petitioner's criminal trial that was highly prejudicial. [Id. at 6].

---

[1] The copy of the trial court record filed by the respondent in the state habeas proceeding will be used for references to the trial court record because it is sequentially numbered, which will allow for easier reference. An unnumbered copy of the trial court record is also part of the record in this matter.

## II. Statement of Facts[2]

Around 1:00 a.m. on January 7, 2016, Shander Rawlings and Erick Dugger were awakened by men outside their home claiming to be police officers and demanding that they open the door. (TT. at 101). Rawlings' nine-year-old daughter also lived in the Emporia home with Rawlings and Dugger. (TT at 101, 115). As Rawlings walked toward her home's side door, she saw the glass in the door break and three to four men dressed in dark clothing, hoods, and masks entered her home. (TT at 101, 105, 111, 121, 124). Shards of glass lay on the floor inside and outside the home, as well as on the porch. (TT at 135, 181). Rawlings was forced to remove her clothing and lie on the bedroom floor. (TT at 102). Dugger was struck in the head with a gun, causing his head to bleed, and was also ordered to lie on the bedroom floor. (TT at 103, 116-17).

Dugger told the men to take whatever they wanted, and suggested they take the keys to the car. (TT at 103, 104, 117). The assailants took the rent money from under the mattress, which consisted of $500 to $600 in $100 bills. (TT at 106). The men also took Rawlings' cell phone and Dugger's wallet, which contained around $150, including a $100 bill; a pair of Timberland boots, and a television also were moved near the door of the house. (TT at 107, 118, 181-82).

Around 1:10 a.m., Police Officers Todd Miller and Dennis Prince arrived at the home. (TT at 127, 134). Immediately before his arrival, Officer Prince saw a man dressed in dark clothing running from the scene toward the wood line by the river trails. (TT at 134, 147). Officers Miller and Prince tended to the victims and secured the scene. (TT at 105, 106, 134). Ten minutes after he arrived at the house, Officer Prince, who had patrolled the area as a police officer for 19 years, drove in the direction of the fleeing man to search for him. (TT at 136).

At 1:21 a.m., Officer Prince saw Walton about 6/10 of a mile from the crime scene.

---

[2] References to the April 18, 2017 trial transcript are designated "TT at __."

Despite the cold weather, Walton, who was dressed in dark clothing, was sweating "profusely." (TT at 136-377, 138, 151). Walton produced identification upon request, which showed that he lived in Charlotte, North Carolina. Walton told Officer Prince that he was in the area because his nephew had thrown him out of the car in which he was riding (TT at 138) and that his "aunt," Wanda Anderson, could verify his story. When the officer contacted Anderson, however, she refuted Walton's story. (TT at 139).

Officer Prince noticed shards of glass on Walton's coat. (TT at 139). The officer searched Walton, and discovered seven $100 bills and some additional cash, as well as a Wells Fargo bank card in the name of Sandra McCray and a Bank of America card in Walton's name. Officer Prince gave the items to Sergeant Harris to bring to the police station. (TT at 140-41, 170-71).

Detective Jerry Wright responded to the victims' home to process the scene and observed glass particles scattered throughout the residence. (TT at 179, 181). Upon exiting the residence, Wright observed a vehicle parked about 40 to 50 yards away from the house. (TT at 187). The car had North Carolina plates, was parked some distance from the curb, a back door was ajar, and it was registered to Sandra McCray of Charlotte, North Carolina. In plain view from outside the car, Detective Wright saw the handles of firearms and several cell phones. (TT at 187-88).

Walton was transported to the police station, where he sat near a police radio. Over the radio, at 3:45 a.m., a report was broadcast that Sandra McCray's car, containing weapons, had been found near the site of the home invasion. (TT at 142-43, 156-57). After the broadcast, Walton again began sweating, said he did not feel "good," and asked to remove his coat. (TT at 143). Detective Wright searched Walton's coat and discovered a stocking cap with the top crown cut out, located in a pocket. (TT at 190-91). Walton told Wright that his clothes were muddy due to "tussling" with a girl who tried to take his cell phone. (TT at 198-99).

4

At trial, Wanda Anderson testified that she is Walton's sister, and had not seen him on January 6. She said she was at work in Petersburg when Officer Prince called her, her car was with her there, and there was only one key. (TT at 160-61). She did not even know Walton was in town that day. (TT at 162). Anderson's son, Jaquaay Walton, also testified that he had not seen Walton on January 6. (TT at 167). Forensic scientist Joshua Kruger compared the glass particles from Walton's coat to glass particles from the crime scene, and testified that three of the seven glass particles from Walton's coat were consistent with the glass particles recovered from the home invasion. (TT at 234-35).

Walton called Shariffe Cooke to testify in his defense. Cooke testified that he and Walton drank liquor together after midnight on January 6 at Cooke's home and that Walton left his home around 2:00 a.m. to look for marijuana. (TT at 250, 254, 259).

### III. Exhaustion

"[A] federal court may not grant a writ of habeas corpus to a petitioner in state custody unless the petitioner has first exhausted his state remedies by presenting his claims to the highest state court." Baker v. Corcoran, 220 F.3d 276, 288 (4th Cir. 2000). Exhaustion requires that a petitioner must have presented "'both the operative facts and the controlling legal principles'" to the state's highest court. Kasi v. Angelone, 300 F.3d 487, 501-02 (4th Cir. 2002) (quoting Matthews v. Evatt, 105 F.3d 907, 911 (4th Cir. 1997)); see also Valentino v. Clarke, 972 F.3d 560, 575 (4th Cir. 2020) ("it would be unseemly" for federal court "to upset a state court conviction without an opportunity for the state courts to correct a constitutional violation") (citation and internal quotation marks omitted).

Walton admits he did not raise Ground I in any of the state court proceedings. [Dkt. No. 1

at 11].[3] Walton argues Claim I was not exhausted because the trial judge refused to allow trial counsel to withdraw and that her appointment on appeal created an impediment that prevented him from presenting it to the Supreme Court of Virginia because appellate counsel had a conflict. [Dkt. No. 1 at 11]. Walton, however, also failed to raise Ground I in his state habeas corpus proceeding and does not suggest why he could not have brought a claim of ineffective assistance of appellate counsel in the state habeas proceedings after his direct appeal had concluded. Indeed, Walton was aware of the facts necessary to bring this claim in state habeas prior to filing his state habeas petition. Thus, no state court has addressed any portion of the claim.

"A claim that has not been presented to the highest state court nevertheless may be treated as exhausted if it is clear that the claim would be procedurally barred under state law if the petitioner attempted to present it to the state court." Baker, 220 F.3d at 288; see Bassette v. Thompson, 915 F.2d 932, 936-37 (4th Cir. 1990). Such claims are technically exhausted and are defaulted. Baker, 220 F.3d at 288. The allegations in Ground I cannot now be raised in state court because they would be barred by both the state habeas statute of limitations (Code § 8.01-654(A)(2)) and the successive petition bar (Code § 8.01-654(B)(2)). Ground I, therefore, is simultaneously exhausted and defaulted precluding federal habeas review. See Baker, 220 F.3d at 288.

Ground II, that counsel erred in failing to file a pretrial motion to suppress physical evidence seized from Walton by the police, was addressed on the merits in the state habeas proceedings. ( VSCT R. at 735-39). Walton alleged that counsel was ineffective because she

---

[3] Walton inserted a title into his habeas petition that precedes his claim — "Unexhausted Claim." [Dkt. No. 1 at 12]. He also characterizes his claim as presenting the question, "did the trial court deprive Walton of state exhaustion and fundamental equal protection on direct appeal?" [Id. at 13]. Walton complains that the respondent has mischaracterized his claim. Regardless of whether Walton's claim is characterized as an ineffective assistance of appellate counsel claim or a denial of counsel of choice claim, the result is the same — the claim is defaulted. Further, the default aside, the claim has no merit. See, infra at 11-17.

failed to argue that the evidence was discovered incident to an arrest made without probable cause and that the fact that his aunt was unable to verify his story was insufficient probable cause for his arrest, rendering the search incident to the arrest unlawful which exceeded the bounds of Terry v. Ohio, 392 U.S. 1 (1968). The habeas court rejected these allegations.

Walton alleged in his reply to the motion to dismiss that his counsel was ineffective for failing to argue that Walton was not under arrest until after his interview with the police at the police station and thus, even if the officer had probable cause to make an arrest, he did not arrest Walton and thus the search of Walton's person was not sufficiently contemporaneous with his actual arrest. The habeas court did not address the merits of this allegation because Walton had not raised it in his state habeas petition, found that Walton knew of the facts alleged in support of this claim at the time he filed the state habeas petition, and that Walton had not been granted leave to amend his petition. The habeas court then found the allegation to be procedurally defaulted. (VSCT R. at 740). Thus, to the extent Walton argues this portion of Ground II in this Court, it is defaulted. See Lawrence v. Branker, 517 F.3d 700, 714 (4th Cir. 2008); Breard v. Pruett, 134 F.3d 615, 619 (4th Cir. 1998).

A defaulted claim nonetheless may be reviewed when a petitioner can show cause for the default and prejudice stemming therefrom, or that a fundamental miscarriage of justice otherwise will occur. Breard, 134 F.3d at 620 (citation omitted). The existence of cause ordinarily turns upon a showing of (1) a denial of effective assistance of counsel, (2) a factor external to the defense which impeded compliance with the state procedural rule, or (3) the novelty of the claim. Clozza v. Murray, 913 F.2d 1092, 1104 (4th Cir. 1990). Importantly, a court need not consider the issue of prejudice in the absence of cause. See Kornahrens v. Evatt, 66 F.3d 1350, 1359 (4th Cir. 1995). Walton's cause and prejudice argument alleges that the trial judge's appointment of

7

his trial counsel to represent him on appeal is the "cause" of his default because counsel had a conflict of interest that caused counsel not to raise Ground I claim on appeal. Walton alleges the "prejudice" is that the trial court's actions prohibited him from exhausting Ground I on direct appeal. [Dkt. No 21 at 5].

Walton, however, cannot overcome the default because he can neither demonstrate cause and prejudice, nor a fundamental miscarriage of justice. See Mackall v. Angelone, 131 F.3d 442, 445 (4th Cir. 1997). Walton was aware of the factual basis for the allegation when he filed his state habeas corpus petition, and he could have raised Ground I in that state habeas petition. In addition, Ground I has no merit. Furthermore, Walton has not demonstrated actual innocence to excuse the default. See Schlup v. Delo, 513 U.S. 298, 316 (1995). The respondent also notes that Walton cannot rely on Martinez v. Ryan, 566 U.S. 1 (2012), to overcome a default. To the extent the claim alleges ineffective counsel, Walton asserts ineffective assistance of appellate counsel. Martinez applies only to claims of ineffective assistance of trial counsel. Davila v. Davis, 137 S. Ct. 2058, 2065 (2017).

### IV. Standard of Review

Under the Antiterrorism and Effective Death Penalty Act (AEDPA), "a federal court may not grant a state prisoner's habeas application unless the relevant state-court decision 'was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States.'" Knowles v. Mirzayance, 556 U.S. 111, 121 (2009). "AEDPA erects a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court." Burt v. Titlow, 571 U.S. 12, 20 (2013).

An unreasonable application of federal law is not the same as an incorrect application. "The question under AEDPA is not whether a federal court believes the state court's

8

determination was incorrect but whether that determination was unreasonable – a substantially

higher threshold." <u>Schriro v. Landrigan</u>, 550 U.S. 465, 473 (2007); <u>accord</u> <u>Renico v. Lett</u>, 559

U.S. 766, 772-73 (2010). That is, the state court's judgment "must be objectively unreasonable,

not merely wrong; even clear error will not suffice." <u>White v. Woodall</u>, 572 U.S. 415, 419 (2014)

(internal quotations and citation omitted); <u>see</u> <u>Harrington v. Richter</u>, 562 U.S. 86, 103 (2011)

(state decision is unreasonable application of federal law only if ruling so "lacking in

justification that there was an error well understood and comprehended in existing law beyond

any possibility of fairminded disagreement").

This "highly deferential standard ... demands that state court decisions be given the

benefit of the doubt." <u>Renico</u>, 559 U.S. at 773 (internal quotations and citations omitted). "The

required deference encompasses both the state court's legal conclusions and its factual findings."

<u>Lenz v. Washington</u>, 444 F.3d 295, 299 (4th Cir. 2006). "[A] determination on a factual issue

made by a State court shall be presumed correct." <u>Tucker v. Ozmint</u>, 350 F.3d 433, 439 (4th Cir.

2003) (quoting 28 U.S.C. § 2254(e)(1)). "In reviewing a habeas petition, federal courts must

presume the correctness of a state court's factual determinations unless the habeas petitioner

rebuts the presumption of correctness by clear and convincing evidence." <u>Green v. Johnson</u>, 515

F.3d 290, 299 (4th Cir. 2008); <u>see</u> <u>Schriro</u>, 550 U.S. at 473-74.

Claims of ineffective assistance of counsel are determined based on the highly

demanding standard set forth for such claims in <u>Strickland v. Washington</u>, 466 U.S. 668 (1984).

Under <u>Strickland</u>, the petitioner has the burden to show both that his attorney's performance was

deficient and that he was prejudiced as a result. See <u>Strickland</u>, 466 U.S. at 687.

A "doubly deferential judicial review" applies to "a <u>Strickland</u> claim evaluated under the

§ 2254(d)(1) standard." <u>Knowles</u>, 556 U.S. at 123; <u>see also</u> <u>Woods v. Etherton</u>, 136 S. Ct. 1149,

1151 (2016). Put another way, federal courts on habeas review give the benefit of the doubt to the state courts and to defense counsel. Woods, 136 S. Ct. at 1151. "Section 2254(d) codifies the view that habeas corpus is 'a guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." Valentino, 972 F.3d at 581 (quoting Harrington, 562 U.S. at 102-03) (additional citation omitted).

Strickland's first prong, the "performance" inquiry, "requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Strickland, 466 U.S. at 687. A federal court reviewing a habeas petition indulges a "strong presumption" that counsel's conduct fell within the "wide range of reasonable professional assistance." Id. at 689. The "basic lesson" of Strickland is that "judicial scrutiny" of counsel's performance must be "highly deferential." United States v. Mason, 774 F.3d 824, 828 (4th Cir. 2014) (citation omitted). Attorneys "are permitted to set priorities, determine trial strategy, and press those claims with the greatest chances of success." Id.

Strickland's second prong, the "prejudice" inquiry, requires showing that there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. A reasonable probability is a "probability sufficient to undermine confidence in the outcome." Id. "The likelihood of a different result must be substantial, not just conceivable." Valentino, 972 F.3d at 580 (quoting Harrington, 562 U.S. at 86); accord Shinn v. Kayer, 141 S. Ct. 517, 523 (2020). The question is whether the state court, which has "substantial 'latitude to reasonably determine that a defendant has not [shown prejudice],' still managed to blunder so badly that every fairminded jurist would disagree." Mays v. Hines, 141 S. Ct. 1145, 1149 (2021) (quoting Knowles, 556 U.S. at 123).

10

The two-pronged <u>Strickland</u> test also applies to claims of ineffective appellate counsel. <u>Bell v. Jarvis</u>, 236 F.3d 149, 164 (4th Cir. 2000) (en banc). An ineffective counsel claim may be disposed of on either prong of the Strickland test. <u>See</u> <u>Jones v. Clarke</u>, 783 F.3d 987, 991-92 (4th Cir. 2015); <u>Spencer v. Murray</u>, 18 F.3d 229, 232-33 (4th Cir. 1994).

### A. Ground I

Ground I, which alleges the trial court denied him effective assistance of counsel on appeal by denying trial counsel's motion to withdraw and appointing her to represent him on direct appeal, is not only defaulted, but it has no merit.[4] While a defendant who does not require appointed counsel may choose his attorney, the right to choose one's counsel "does not extend to defendants who require [court appointed] counsel." <u>United States v. Gonzalez-Lopez</u>, 548 U.S. 140, 151 (2006).

### 1. Background

The record establishes that on or about February 8, 2016, Del M. Mauhrine Brown ("Brown") was retained, prior to the preliminary hearing, to represent Walton. (VSCT R. at 147). The preliminary hearing was held on July 26, 2016, and the charges were certified to the grand jury. The grand jury returned the indictments on October 4, 2016. (<u>Id.</u> at 145-71). The matter was continued to a motions hearing day, March 9, 2017, and the certificate of analysis for the coat and glass fragments was filed on December 13, 2016 as well as a certificate of analysis for DNA evidence on January 4, 2017. (<u>Id.</u> at 182-85, 188-93).

On March 8, 2017, Brown filed a motion to withdraw indicating that Walton had failed to provide her with resources and information that would allow her to adequately defend him and

---

[4] Walton complains that the respondent misrepresents Ground I. [Dkt. No. 17 at 2]. As explained herein, whether Ground I alleges counsel was ineffective for not raising certain claims on appeal, or that the trial court denied Walton his counsel of choice, the claim has no merit.

requested that counsel be appointed. (Id. at 194).[5] The trial judge denied her motion, and the matter was set for trial on April 18, 2017. (Id. at 196-97). On April 10, 2017, Brown filed a notice of alibi, a motion for a bill of particulars, a motion to suppress, and a motion to recuse. (Id. at 205-12). The motion to suppress was based upon recent discovery of the seizure of money, which was seized from Walton's person when he was stopped in the early morning hours of January 7, 2016. Counsel had been provided open file discovery by the prosecutor and the motion to suppress was denied because it was predicated upon counsel not being informed of the money earlier.[6]

Prior to the plea colloquy, Walton was sworn and during the colloquy stated he was dissatisfied with counsel because witnesses were missing. The trial court investigated the matter and determined one witness was out of state and Brown had been unsuccessful in obtaining service on the witness. A second witness, Cook, turned up shortly before jury selection began. (TT at 23-29). After the trial court had inquired of Walton and Brown regarding the requests for witnesses, the trial court found that Brown had been diligent (even using an investigator) and had not been able to obtain service on the one witness. (Id. at 26).[7] Walton then stated to the trial court that he was "not saying [he was] not satisfied with her work," and then noted he had not been aware that the witness had not been "served." (Id. at 27). Having resolved that issue, the

---

[5] No transcript of the March 9, 2017 hearing was prepared during any of the state proceedings. Such a transcript was unnecessary because Walton had never raised this claim in the state habeas proceedings.

[6] Brown had believed that a discovery order was entered, and the prosecutor had failed to disclose the seizure of the money. The prosecutor, however, was unaware of the money until defense counsel brought it to his attention. Brown and the prosecutor agreed that no discovery order had been entered, and that Brown had reviewed the prosecutor's file via the open file policy on more than one occasion. (TT 12-16). The basis of the suppression motion was violation of a discovery order, which turned out to have never been entered. Walton, of course, was aware that money had been seized from his person.

[7] Trial counsel had been able to talk with witness, but was unable to get service on her or convince her to appear voluntarily. (Id. at 24).

trial court then inquired if there was any other reason Walton was not satisfied with Brown's "services as [his] attorney" and Walton replied "no." (Id.).

When asked if Walton was ready for trial, Walton responded yes. (Id. at 29). The trial court also reviewed a plea form with Walton, and Walton stated that he had answered all of the questions truthfully. (Id. at 30). The questionnaire indicated that Walton was satisfied with his attorney, she had done everything that he had asked of her, and that he was ready for trial that day. (VSCT R. at 262-63).

At the conclusion of the sentencing hearing, Brown asked to withdraw from any further proceedings and stated that she would note Walton's appeal by filing a notice of appeal, but asked that another attorney be appointed to represent him on direct appeal. (ST at 17).[8] The trial court responded that no one was better suited than Brown to represent Walton on appeal because she was familiar with the "matters of the case," and added that if Walton was unable to afford counsel, the court would appoint Brown to handle the appeal. (ST. at 18). The orders of both the Court of Appeals of Virginia and the Supreme Court of Virginia, establish Brown was court appointed counsel for Walton on appeal. [Dkt. Nos. 17-3 at 1; 17-4 at 1].

At the sentencing hearing, Walton did not provide evidence or proffer that he was in a financial position to hire counsel of his own choosing for his appeals. To the contrary, in a letter dated September 11, 2017, Walton complained about Brown's representation at trial and asked the trial court to appoint a different attorney. The court denied his request. (VSCT R. at 285). Walton filed a written objection to the denial of his motion that the circuit court appoint him counsel.

---

[8] References to the July 13, 2017 sentencing transcript are designated "ST at __."

13

*2. Analysis*

Walton argues his ineffective assistance of appellate counsel on appeal was "constructive" because Brown could not be expected to assign error to the trial court's appointment of her to represent him on appeal because if she had done so that would have opened her up to scrutiny of her performance, revealing a practice of "cutting corners" and a conflict of interest. [Dkt. No. 1 at 19-21]. Walton also appears to argue that his counsel was ineffective for not raising on direct appeal that he was denied his counsel of choice during trial because Brown did not raise the issue of the denial of her pretrial motion to withdraw on appeal.

It is beyond question that a criminal defendant is entitled to effective appellate counsel. To establish a claim of ineffective assistance of appellate counsel for failure to raise a specific claim on appeal, a petitioner must show that counsel performed deficiently and that, but for such deficient performance, there is a reasonable probability of a different outcome. Jarvis, 236 F.3d at 164. There is a presumption that appellate counsel selected the issues that "were most likely to afford relief on appeal." Id. (citation omitted). "'*[O]nly* when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of counsel be overcome'" Id. (emphasis added) (quoting Smith v. Robbins, 528 U.S. 259, 288 (2000)), and counsel is not required to raise all non-frivolous issues on appeal. As the Supreme Court has commented, the effective appellate advocate is one who will winnow out weaker arguments and focus on a few that are more likely to prevail. See Jones v. Barnes, 463 U.S. 745, 751-52 (1983) ("Neither Anders nor any other decision of this Court suggests, however, that the indigent defendant has a constitutional right to compel appointed counsel to press nonfrivolous points requested by the client, if counsel, as a matter of professional judgment, decides not to present those points").

14

In both the Court of Appeals of Virginia and the Supreme Court of Virginia, counsel challenged the sufficiency of the evidence and the sentence imposed. While the appellate courts did not grant relief on these issues, Walton has not demonstrated that a challenge to the trial court's appointment of Brown for the appeal was a stronger issue for an appeal, especially where appointed counsel was familiar with the issues in the case after having served as trial counsel. To the extent Walton alleges the denial of the motion to withdraw denied him counsel of choice, that claim also fails.

Importantly, regardless of who represented Walton on direct appeal, claims of ineffective assistance of counsel are not cognizable on direct appeal in Virginia, see McGinnis v. Commonwealth, 821 S.E.2d 700, 710 (Va. 2018),[9] and Virginia appellate courts review a claim

---

[9] In McGinnis, the Supreme Court of Virginia summarized when a claim of ineffective assistance of counsel could be raised and heard.

> Former Code § 19.2-317.1, repealed in 1990, provided for appellate review of a claim of ineffective assistance of counsel "if all matters relating to such issue are fully contained within the record of the trial." Since the repeal of that statute, we have consistently held that claims of ineffective assistance of counsel, even if asserted during proceedings in the circuit court, are not reviewable on direct appeal, but must be raised in a petition for a writ of habeas corpus after exhaustion of all appellate remedies.

821 S.E.2d at 710 (citing Sigmon v. Dir. of the Dep't of Corr., 739 S.E.2d 905, 908 (Va. 2013)). See Garland v. Virginia, No. No. 7:12cv165, 2012 U.S. Dist. LEXIS 52344, *3 (W.D. Va. Apr. 13, 2013) (noting after the repeal of Va. Code § 19.2-317.1, Virginia appellate courts "could not review an ineffective assistance of counsel claim on a direct appeal"); see, e.g., Payne v. Commonwealth, 364 S.E.2d 765, 768-69 (Va. Ct. App. 1988) (declining to consider a claim of ineffective assistance prior to the repeal of Code § 19.2-317.1 because the determination of the claim could "only be made after counsel has had an opportunity to explain the reasoning behind his actions" and the statute did "not contemplate that a determination of trial counsel's ineffectiveness be made upon a partial record"). Even where appellate counsel was different than trial counsel, this Court has found appellate counsel was not ineffective for raising ineffective assistance of trial counsel on appeal because such claims are not "reviewable on direct appeal, [and] must be raised in a petition for a writ of habeas corpus after exhaustion of all appellate remedies." Gordon v. Beale, No. 1:19cv1630, 2020 U.S. Dist. LEXIS 154697, *13 (E.D. Va. Aug 24, 2020), appeal dismissed, 834 F. App'x 27, 28 (4th Cir. 2021). Virginia's reasoning for not considering ineffective assistance of counsel on direct appeal is similar to the Fourth Circuit's, which has made it clear that it will not consider a claim of ineffective assistance of counsel on direct appeal unless the claim has not been waived and only if it "need not look beyond the trial court record brought before us in a direct appeal." United States v. Smith, 640 F.3d 580, 587 (4th Cir. 2011) (citations omitted); see also United States v. Baptiste, 596 F.3d 214, 216-17 n.1 (4th Cir. 2010) (where the record "does not conclusively establish" a claim of ineffective assistance of counsel raised on direct appeal, "the proper avenue for such claims is a 28 U.S.C. § 2255 motion filed with the district court"). Walton's consistent reference to what he states was a conflict of interest simply reinforces the respondent's point that Ground I should have been raised in the state habeas petition because Virginia procedure requires that a claim alleging a conflict of interest be raised via a habeas petition to allow for counsel to respond.

that a trial court erred in denying a motion to withdraw for an abuse of discretion. See Payne v. Commonwealth, 357 S.E.2d 500, 508 (Va. 1987). Virginia's standard is the same as the federal standard. See United States v. Mullen, 32 F.3d 891, 895 (4th Cir. 1994). In addition, even assuming a court were to find an abuse of discretion, a defendant must still show prejudice. See United States v. Calderon, 127 F.3d 1314, 1343-44 (11th Cir. 1997) (even though the defendant alleged trial counsel was ineffective prior to sentencing, the trial court denied trial counsel's motion to withdraw and on appeal held that "even were we to find that the district judge abused his discretion, appellant must still demonstrate that, in the context of the sentencing hearing, he was somehow prejudiced by trial counsel continuing to represent him"); United States v. Wilks, 46 F.3d 640, 644 (7th Cir. 1995) ("Even if ... the district court abused its discretion when it denied [the defendant's] request for new counsel, such an error [was] harmless 'if it did not result in a violation of a defendant's Sixth Amendment right to effective assistance of counsel.'") (citation omitted); see also United States v. Horton, 693 F.3d 463, 467 (4th Cir. 2012) (assuming the district court abused its discretion in denying the motion for substitute counsel, the error would not be a basis for reversal of a conviction absent prejudice to the defendant).

The same analysis applies to a claim that counsel should have raised a claim that Walton was denied the right to counsel of his choice when the trial judge denied the March 8, 2017 motion to withdraw prior to trial. "[T]he right to counsel of choice does not extend to defendants who require counsel to be appointed for them." United States v. Gonzalez-Lopez, 548 U.S. 140, 151 (2006) (citing Wheat v. United States, 486 U.S. 153, 159 (1988); Caplin & Drysdale v. United States, 491 U.S. 617, 624 (1989)). Any attorney raising this claim on direct appeal would have been limited to the record.

16

Here, the record does not indicate that Walton was denied his right to counsel of his choice because nothing in the record establishes that Walton had the necessary funds to retain another attorney. Indeed, the record is the opposite. The March 8, 2017 motion to withdraw notes Brown was retained, but asks that the trial court *appoint* counsel "in her stead" upon granting the motion to withdraw. (VSCT R. at 194). The only inference to be drawn from the motion is that Walton did not have funds to hire another attorney.[10] Indeed, Brown did not file a motion to withdraw and substitute, but a motion to withdraw and appoint.[11] Further, Walton had appointed counsel in both state appellate courts, and even Walton's own request post-sentencing to replace Brown indicates he wants "new *appointed* counsel for [his] appeal."[12] (emphasis added).[13]

In the instant case, even if he had not defaulted the claim, Walton has not satisfied either prong of the Strickland test for this contention of ineffective appellate counsel. Walton has also

---

[10] In Virginia, an appellate court cannot consider matters outside of the record. See Woodfin v. Commonwealth, 372 S.E.2d 377, 382 (Va. 1988) (holding the court is "limited to the appellate record …[and is] not permitted to supplement the record by referring to [other evidence] not made a part of this record."); Smith v. Commonwealth, 432 S.E.2d 2, 6 (Va. Ct. App. 1993) ("An appellate court must dispose of the case upon the record and cannot base its decision upon appellant's petition or brief, or statements of counsel in open court. We may act only upon facts contained in the record.") (citing Riddick v. Commonwealth, 115 S.E. 523, 524 (Va. 1923)); see also Commonwealth v. Williams, 553 S.E.2d 760, 764 (Va. 2001) ("the circuit court's judgment is presumptively correct and the *burden is on the appellant to present a sufficient record to permit a determination whether the circuit court committed an alleged error*") (citations omitted).

[11] The record also does not provide any inference of a breakdown in the attorney-client relationship prior to trial. The plea colloquy prior to trial indicated Walton was concerned with witnesses and after inquiry by the trial court was satisfied with the explanation as to why the one witness, who counsel had not been able to serve, was not present. Walton then stated to the trial court that he was "not saying [he was] not satisfied with her work," only that he had not been aware that the witness had not been "served." (TT at 27). Having resolved that issue, the trial court inquired if there was any other reason Walton was not satisfied with Brown's "services as [his] attorney" and Walton replied "no." (Id.).

[12] Regarding the denial of the motion for new appointed counsel on appeal, Walton had "no right to have a particular lawyer represent him" and had to establish "good cause" to provide a basis for appointment of a new attorney. United States v. Gallop, 838 F.2d 105, 108 (4th Cir. 1988); see also Gonzalez-Lopez, 548 U.S. at 151 ("[T]he right to counsel of choice does not extend to defendants who require counsel to be appointed for them"). Whether "good cause" exists rests within the discretion of the trial court. See Gallop, 838 F.2d at 108. Once a court appoints counsel for an indigent defendant, the decision whether to grant a motion to withdraw or substitute counsel lies within the court's discretion. See United States v. Horton, 693 F.3d 463, 466-67 (4th Cir. 2012) (citations omitted).

[13] Walton's pleading is dated August 29, 2017 and is included in the state court manuscript record. It was filed on September 11, 2017, and the circuit court denied the motion on September 14, 2017. (VSCT R. at 285). Walton filed a written objection to "the [circuit] court's denial" of his motion "to *appoint* counsel." (Id. at 289) 9emphasis added).

not demonstrated that the trial court abused its discretion in appointing trial counsel to represent him on appeal, or that he was denied counsel of his choice. Ground I will be dismissed.

### B. Ground 2

The general claim that Walton presses in Ground 2 is that counsel erred in failing to file a pre-trial motion to suppress the evidence seized from him by the police. In its denial of habeas relief, the Supreme Court of Virginia addressed the merits of Walton's claim that counsel was ineffective in failing to move to suppress the money and debit cards taken from him by the police and the shards of glass taken from the coat he was wearing because the police lacked probable cause to arrest him for the crimes, and thus, any search incident to that arrest was unlawful. (VSCT R. at 735-39).

The Supreme Court of Virginia first determined that Walton had not provided sufficient factual support in his petition for his assertion that he had explained the circumstances of his arrest to his trial attorney. (Id. at 736). While Walton challenges that finding in his current petition, he does not argue that the state habeas court made an unreasonable factual determination of a fact. Instead, he challenges the state court's assessment of his state habeas claim of ineffective assistance of trial counsel.

Walton cannot prevail on such a contention in this Court. Claims of error in a state post-conviction proceeding cannot serve as a basis for federal habeas relief. See Bryant v. Maryland, 848 F.2d 492, 493 (4th Cir. 1988); accord Lawrence, 517 F.3d at 717 (petitioner not entitled to federal habeas relief on assignment of error relating to post-conviction proceedings because such claim represents "an attack on a proceeding collateral to detention and not to the detention itself"). See also United States v. Dago, 441 F.3d 1238, 1248 (10th Cir. 2006) ("due process

challenges to post-conviction procedures fail to state constitutional claims cognizable in a federal habeas corpus proceeding").

Moreover, the Supreme Court of Virginia rejected Walton's claim that counsel erred in failing to file a suppression motion and his assertion that such a motion would have been granted. The court found that the claim failed to satisfy either prong of the Strickland test. The habeas court included a lengthy recitation in its order of the evidence from Officer Prince's trial testimony and then ruled as follows:

> Under the sequence of events described by Officer Prince, counsel could have reasonably determined probable cause supported petitioner's arrest and that the search of his person incident to that arrest was appropriate. See Barnes v. Commonwealth, 279 Va. 22, 34 (2010) (probable cause exists when the facts and circumstances within the arresting officer's knowledge are sufficient to warrant a person of reasonable caution to believe that an offense has been or is being committed). Officer Prince encountered petitioner in the immediate temporal and geographic vicinity of the crime scene in a location that was consistent with the direction Prince had seen a person flee from the scene minutes earlier. That petitioner was that person was corroborated by petitioner's dark clothing, the mud on his pants and shoes, his perspiration, and his being the only person in the area at approximately 1:30 a.m. Finally, after Prince informed petitioner he was investigating a nearby, recently committed crime, petitioner endeavored to have his aunt provide Prince with a false explanation for how he came to be in the area. This proactive, duplicitous conduct cemented Prince's probable cause to believe petitioner was involved in the home invasion and, as such, it was reasonable for counsel to conclude petitioner was lawfully arrested and searched. See Devenpeck v. Alford, 543 U.S. 146, 149, 155-56 (2004) (noting that the suspect's "untruthful and evasive" answers to police questioning could support probable cause); United States v. Babcock, 924 F.3d 1180 (11th Cir. 2019) (lies to law enforcement contribute to probable cause).

> Moreover, contrary to petitioner's suggestion, Prince's testimony on cross-examination regarding discovering the credit cards and money during a "pat down" that occurred after another officer arrived on the scene does not demonstrate any illegality in the search of petitioner's person. Specifically, it does not demonstrate Prince seized the money or credit cards from petitioner before he had probable cause to arrest petitioner, i.e., before Prince called petitioner's aunt. Accordingly, precisely when Prince discovered the credit cards and money and whether petitioner was handcuffed at that time is immaterial. It is not "particularly important that the search preceded the arrest rather than vice versa" as long as the officer had probable cause to arrest and a formal arrest follows quickly. Rawlings v. Kentucky, 448 U.S. 98, 111 (1980); see Italiano v. Commonwealth, 214 Va.

334,336 (1973) (if probable cause exists to arrest a person, a search of the person incident to that arrest may be conducted either before or after the arrest as long as the search is contemporaneous with the arrest); see also United States v. Currence, 446 F.3d 554, 557 (4th Cir. 2006) (a search incident to arrest must be contemporaneous with the arrest and the search may occur before the arrest). Thus, petitioner has failed to demonstrate that counsel's performance was deficient or that there is a reasonable probability that, but for counsel's alleged errors, the result of the proceeding would have been different.

(VSCT R. at 738-39).

In the context of a claim of ineffective counsel for failure to file a suppression motion, a petitioner must demonstrate that "his Fourth Amendment claim is meritorious and that there is a reasonable probability that the verdict would have been different absent the excludable evidence in order to demonstrate actual prejudice." Kimmelman v. Morrison, 477 U.S. 365, 375 (1986). As the Fourth Circuit has held, a petitioner must demonstrate that "an unfiled" suppression motion "would have had some substance," that "the [suppression] motion was meritorious and likely would have been granted," and that there is "a reasonable probability that granting the motion would have affected the outcome of his trial." Grueninger v. Dir., Va. Dep't of Corr., 813 F.3d 517, 524-525 (4th Cir. 2016) (citation omitted).

Walton complains that the Supreme Court of Virginia attributed probable cause for his arrest that the officer never "endorsed." [Dkt. No. at 36-37].[14] However, probable cause is viewed objectively, not subjectively. The pertinent question on review is whether the facts, viewed by "'an objectively reasonable police officer, amount to probable cause.'" Curley v.

---

[14] In his current habeas petition in this Court, Walton claims that Officer Prince talked to Walton's sister, not his aunt, and the aunt never said Walton was lying. [Dkt. No. 1 at 38]. Officer Prince, however, called the number Walton provided and spoke to his sister, Wanda Anderson. (TT at 139). Anderson testified at trial confirming Officer Prince's testimony, and contradicted Walton's statement to Officer Prince. (TT at 160-61). Walton's nephew, Jaquaay, also testified at trial and contradicted Walton averring that he had not been with Walton on January 6 and 7, 2016, and did not even know Walton was in town. (TT at 167-68). Officer Prince's testimony recited matters in a chronological order and his call to Anderson occurred prior to the search, which is contrary to Walton's argument that the evidence suggests that Officer Prince took the money from Walton before the existence of probable cause. [Dkt. No. 1 at 27]. Walton also acknowledges that the seizure of the glass shards from his coat could have been supported by probable cause. [Id. at 30].

_Commonwealth_, 816 S.E.2d 587, 590 (Va. 2018) (probable cause to support a warrantless

search) (quoting _District of Columbia v. Wesby_, 138 S. Ct. 577, 586 (2018)).

> [P]robable cause "requires only a probability or substantial chance of criminal
> activity, not an actual showing of such activity." [_Illinois v._] _Gates_, 462 U.S.
> [213] at 243 n.13 [(1983)] (emphasis added). "The Constitution," after all, "does
> not guarantee that only the guilty will be arrested." _Joyce_ [_v. Commonwealth_], 56
> Va. App. [646] at 659, 696 S.E.2d [237,] 243 [(2010)] (quoting _Baker v._
> _McCollan_, 443 U.S. 137, 145 (1979)).

> "The substance of all the definitions of probable cause is a reasonable ground for
> belief of guilt. And this means less than evidence which would justify
> condemnation or conviction." _Id._ (quoting _Slayton_ [_v. Commonwealth_], 41 Va.
> App. [101,] 107, 582 S.E.2d [448,] 451 [(2003)]).[15] "In other words, even though
> probable cause means more than a 'mere suspicion,' it is not necessary for the
> facts to be 'sufficient to convict' the accused of the offense." _Id._ at 659-60, 696
> S.E.2d at 243. "Unlike a factfinder at trial," therefore, "reasonable law officers
> need not resolve every doubt about a suspect's guilt before probable cause is
> established." _Id._ at 660, 696 S.E.2d at 243 (internal quotation marks omitted).

_Tizon v. Commonwealth_, 723 S.E.2d 260, 267-68 (Va. Ct. App. 2012) (footnote added).

      Virginia appellate courts hold, based upon federal precedent, that "once 'probable cause

exists to arrest a person, a constitutionally permissible search of the person incident to arrest may

be conducted by an officer either before or after the arrest if the search is contemporaneous with

the arrest.'" _Slayton_, 582 S.E.2d at 451 (quoting _Italiano v. Commonwealth_, 200 S.E.2d 526, 528

(Va. 1993)).[16] Here, the Supreme Court of Virginia's determination that probable cause existed

for petitioner's arrest is not an unreasonable application of federal law or an unreasonable

determination of the facts. _See, supra_ at 19. Ground II will be dismissed.

****

---

[15] _Slayton v. Commonwealth_ quotes _Brinegar v. United States_, 338 U.S. 160, 175 (1949). _Slayton_, 582 S.E.2d at 451.

[16] The specific instances of Brown's performance that Walton alleges were ineffective are each without merit, which merely reinforces the Court's prior determination that there was no conflict of interest. _See Jones v. Polk_, 401 F.3d 257, 267 (4th Cir. 2005) (to prevail on a claim that a petitioner was deprived of effective assistance of counsel based upon a conflict of interest a petitioner must show "that his counsel labored (1) under an actual conflict of interest that (2) adversely affected the representation") (citations omitted).

21

In his opposition to the respondent's motion to dismiss, petitioner moved this Court to hold an evidentiary hearing to clarify the facts. [Dkt. Nos. 20, 21]. Petitioner argues a hearing is necessary to ensure his exhibits were included [Dkt. No. 21 at 1], so that Petitioner can point out what he characterized as "chronological inconsistencies," which he listed with references to the record, and to allow the Court to review the whole record. [Id. at 2-5]. The remainder of his brief in support consists of argument in support of his claims, his dispute with the standard of review for federal habeas, questions the validity of respondent's arguments, and his disagreement with the United States Supreme Court's jurisprudence on probable cause. [Id. at 5-9].

Walton's stated reasons for a hearing no longer exist because his exhibits were filed on December 6, 2021 [Dkt. No. 23], and the Court has considered his arguments and exhibits, and has reviewed the entire state criminal and habeas record, and the record in this matter — including his arguments regarding the standard of review and probable cause. See Bennett v. Angelone, 92 F.3d 1336, 1347 (4th Cir. 1996) (denying petitioner's request for an evidentiary hearing because he "add[ed] nothing 'additional'" to the factual mix already before the district court"). As a result, the Court finds that an evidentiary hearing is not required because the facts in the existing record are sufficient to resolve the issues raised, and the Court's review of the record, including Walton's arguments, negates the need for any further hearing. See, e.g., Rule 8 of the Rules Governing Section 2254 Cases; Beaver v. Thompson, 93 F.3d 1186, 1190 (4th Cir. 1996).

## V. Conclusion

For the foregoing reasons, respondent's Motion to Dismiss [Dkt. No. 15] is granted, the motion for an evidentiary hearing will be dismissed as moot[17] [Dkt. No. 20], and this petition must be dismissed with prejudice. An appropriate Order and judgment shall issue.[18]

Entered this __21__ day of __December__ 2021.

Alexandria, Virginia

_/s/_

Rossie D. Alston, Jr.
United States District Judge

---

[17] Petitioner's Rule 60(b) motion is still pending [Dkt. No. 11], but a review of the docket reveals that motion was granted on August 25, 2021. [Dkt. No. 12]. Accordingly, the Rule 60(b) motion will be dismissed as moot.

[18] An appeal may not be taken from the final order in a § 2254 proceeding unless a judge issues a certificate of appealability ("COA"). 28 U.S.C. § 2253(c)(1)(A). A COA will not issue unless a prisoner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This requirement is satisfied only when "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" Slack v. McDaniel, 529 U.S. 473, 484 (2000) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 n. 4 (1983)). Petitioner fails to meet this standard.

23